**EASTMAN KODAK COMPANY, a New Jersey Corporation, Plaintiff,**

v.

**TRANS WESTERN EXPRESS, LTD., a Colorado Corporation, Defendant.**

Civ. A. No. 89-K-1352.

United States District Court, D. Colorado.

June 20, 1991.

Stephen E. Kapnik, Denver, Colo., for plaintiff.

Joseph J. Mellon, Denver, Colo., for defendant.

### MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me is plaintiff's motion for summary judgment to recover damages suffered when the defendant destroyed plaintiff's goods during shipment. The issues are fully briefed. Since liability is not contested, the dispute is over the proper measure of damages. Because this case is very similar to an earlier matter, (*Eastman*

*Kodak Co. v. Westway Motor Freight,* 751 F.Supp. 1481 (D.Colo.1990)) I conclude oral argument is not necessary.

This is a civil action brought under the Interstate Commerce Act, 49 U.S.C. § 11707 (Supp.1991), (liability of common carriers under receipts and bills of lading). Jurisdiction is found under 28 U.S.C. § 1337. On January 25, 1989, defendant's truck was involved in a traffic accident. Inside the trailer were 880 rolls of Kodak Ektacolor Plus F photographic paper shipped under a bill of lading dated January 24, 1989. The load was shipped from a Kodak manufacturing facility in Windsor, Colorado and destined for Qualex, a customer in South Bend, Indiana. Qualex is a processor of photographic material and purchased the 880 rolls at the contract price of $158,419.80.[1] The traffic accident rendered all but 38 rolls of the shipment commercially unacceptable.

Kodak re-filled the order for Qualex and seeks compensation for the loss directly from Trans Western. Kodak seeks to recover the contract price as damages for the loss. Trans Western argues Kodak is entitled to only the replacement cost of the destroyed goods. The Interstate Commerce Act, 49 U.S.C. § 11707(a)(1), provides,

> A common carrier providing transportation or service ... [is] liable to the person entitled to recover under the bill of lading ... for the *actual loss* or injury to the property caused by (1) the receiving carrier ...

(emphasis added). Kodak defines "actual loss" as the market value of undamaged property, less salvage value, and less expenses saved as a result of the loss. According to Kodak, "actual loss" also includes the profit Kodak would have made on the damaged goods.

Kodak bases its argument on *Polaroid Corp. v. Schuster's Express, Inc.,* 484 F.2d 349 (1st Cir.1973): a case whose facts track this case down to the kind of goods lost. The difference is that in *Polaroid* the goods were high-jacked from the carrier and probably re-entered the stream of commerce. Here, the goods were destroyed in a traffic accident. The court in *Polaroid* concluded, "actual loss" is generally calculated as "equivalent to market value at destination," *Id.* at 351. (citing cases). Adopting the court's reasoning in *Polaroid,* I concluded in an earlier case involving Kodak, "market value at the place of destination, minus expenses saved by the loss and salvage, plus interest is Kodak's measure of damages." *Kodak,* 751 F.Supp. at 1484.

The market value calculation is the general rule for calculating a party's damages. Trans Western, on the authority of *Illinois Central R. Co. v. Crail,* 281 U.S. 57, 50 S.Ct. 180, 74 L.Ed. 699 (1930), argues "special circumstances" justify substituting the replacement cost of the lost product as the proper measure of damages. I distinguished *Crail* in my earlier opinion and will not repeat that analysis here.

The "special circumstances" described by Trans Western are: 1) the possibility that Kodak will reap a double profit on a single sale of goods to Qualex; 2) Kodak's inability to show any lost sales due to the loss. These issues are related. Trans Western argues Kodak quickly replaced the damaged goods from existing inventory re-filling Qualex's order with little disruption. Trans Western believes that if I allow Kodak to earn its expected profit on the first shipment of goods, a profit on the second replacement shipment should not be at Trans Western's expense because Kodak never proved it would have sold the second quantity of goods. I am satisfied with Kodak's proof on the issues and resolve the matter by summary judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explained,

---

1. The contract reflects an invoice price of $167,- 640. less an established percentage discount of $9,220.20 for advertising.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party is responsible for informing the court of its claim and demonstrating the absence of a genuine issue of material fact. But the movant need not support its motion with materials "negating the opponents claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Hence, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The party opposing the motion must come forward with specific facts.

Thus, the moving party is entitled to summary judgment, as a matter of law, when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Since Trans Western argues in favor of an alternative to the general rule, it bears the burden of establishing "special circumstances" exist.

The "double profit" alarm sounded by Trans Western is silenced by the affidavit of Kodak distribution manager, Gary Vance. Vance explains the production schedules and limited life span of Kodak products result in Kodak selling nearly all it produces. Kodak tailors its output to match the demand for its product. (Vance Affidavit, para. 7, 15–16). In contrast, Trans Western cites portions of the Vance affidavit which describe Kodak's ability to refill customer orders if distribution is interrupted. Since Kodak earns a profit on the refilled order, Trans Western argues Kodak must prove the substituted product was taken from a different transaction resulting in a lost opportunity for sale. I reject the proposition that Kodak must produce "documentary evidence of orders it could not meet." (Def.'s Response at 3)

In essence, Trans Western's argument is summarized by the reply: "we don't think Kodak would have sold the product used to refill the order, and Kodak must prove otherwise." Trans Western misstates each party's burden outlined in *Celotex.* I conclude Kodak makes sufficient showings on issues it must prove at trial; Trans Western failed to refute Kodak's proof or demonstrate "special circumstances" warrant the rejection of the market value measure of damages

In this case, neither party disputes a valid contract for the sale of 880 rolls of photographic paper existed at the time of the loss. I find the contract price—the product of arms length negotiations between sophisticated market participants—to be an excellent determination of market value.

Finally, the damages calculation I adopted in the earlier litigation and apply in this case recognizes Kodak's obligation to mitigate its damages. Hence, the salvage value of the damaged product shall be subtracted from the final award. In anticipation of a dispute over the meaning of salvage in this case, I adopt the reasoning of the court in *Sony Magnetic Products of America v. Merivienti O/Y,* 668 F.Supp. 1505 (S.D.Ala.1987), *aff'd* 863 F.2d 1537 (11th Cir.1989). The issue in *Sony* was whether the plaintiff must maximize the salvage value of its damaged product by selling it under its own label at a price discounted to reflect the condition of the product. Since Kodak invests a great deal in promoting the good will of its trademark, it is unreasonable to force Kodak to sell materials under the Kodak label when it knows the quality of the product is compromised. The salvage value of damaged

product shall be the value of the recycled materials.

Accordingly, IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED defendant pay:

$ 158.419.80 (contract price of goods destroyed), plus

$ 1,065.00 (prepaid shipping), plus,

$ 1,000.00 (testing expenses incurred), plus

interest on the final amount from January 25, 1989.

IT IS FURTHER ORDERED the damages award be reduced by the following:

$ 7,239.00 (undamaged portion of shipment), and

$ 7,766.00 (salvage value of raw materials).